## MASSMAN v. SNYDER.

District Court, S. D. Texas, at Houston.
July 11, 1928.

No. 331.

Attachment ⚖=131—Demand in partnership accounting action held not unliquidated, so as to allow amount of attachment bond to be fixed by judge; "unliquidated demand" (Rev. St. Tex. 1925, art. 281).

Demand in action for accounting on a partnership agreement *held* not unliquidated, so as to allow amount of attachment bond to be fixed by the judge, under Rev. St. Tex. 1925, art. 281, notwithstanding allegation of fraudulent representations and concealment of facts, and demand for exemplary damages.

[Ed. Note.—For other definitions, see Words and Phrases, Unliquidated Demand.]

At Law. Action by A. E. Massman against Joseph Snyder. Dismissed.

A. D. Dyess and Hirsch, Brown & Susman, all of Houston, Tex., for plaintiff.

King & Wood, of Houston, Tex., for defendant.

HUTCHESON, District Judge. This is a suit brought in the district court of Harris county, Texas, by Massman, a citizen of Louisiana, against Snyder, a citizen of New York; jurisdiction being fixed by virtue of an attachment under article 281, Revised Statutes of Texas of 1925, and subsequent writ of garnishment, under article 271, Rev. St. 1911 (article 4076, Rev. St. 1925), and removed to this court by Snyder for the purpose of making a limited appearance, and thereby contesting the jurisdiction by motion to quash and vacate the writs.

This suit involves the same subject-matter as the suit of Fisher v. Snyder (No. 1035) 27 F.(2d) 538. The petition alleges that Snyder solicited financial assistance of plaintiff in obtaining leases on lands near Big Hill, agreeing that he would divide the profits; that to evidence the agreement on April 27, 1918, a contract of partnership was executed, providing for its continuance for three years from that date, with the right of termination at the end of one year, and with the agreement that all mineral leases procured on land purchased should belong equally to the parties, the money furnished by Massman to be returned before profits divided; that on June 6, 1918, two additional agreements were entered into, these two including George P. Hudson, one providing that as to certain lands a certain proportion of their interests in the sulphur properties should be pooled at the end of five years under conditions named in the contract, the other granting Massman an option to buy certain of the properties.

On September 2 Joseph Snyder executed to Massman a declaration of trust, in which it was declared that whatever he held in or near Big Hill by way of lease or otherwise were the properties of Massman and Hudson, and that Joseph Snyder did not have any interest or title in any of them, but that he should have only such interest in the net profits, after the return of all moneys expended by Massman and Hudson, as should be ascertained, arrived at, or determined solely by Massman; it being stated positively that Joseph Snyder's interest would be only in the net profits which might accrue in the development and operation of the said properties in the business of mining for sulphur or oil, and that his proportionate interest in said profits have never been agreed upon, nor definitely fixed nor ascertained by the said Massman.

On November 1, 1918, Massman executed to Hudson a conveyance and declaration of trust, reciting Hudson's interest in the lands in controversy to be one-fourth; that in pursuance of all of these contracts and understandings plaintiff advanced $70,000, and with that money acquired mineral leases and acreage in fee, the petition setting out certain tracts, specifically described as 16 parcels as covered by the agreement.

It is then alleged that, after the properties had been acquired, plaintiff and defendant interested persons in their purchase; that during the latter part of 1918 the defendant advised plaintiff that he could sell the properties, so as to obtain the return to plaintiff of all moneys expended by him, the defendant stating that he would be willing to forego the profit to himself if he could make a deal by which the plaintiff would be reimbursed for his outlay; that, unless a deal of that kind was made, not only would the defendant obtain nothing, but the plaintiff would lose his investment; that upon these representations, upon which plaintiff relied, plaintiff agreed to a sale to one Thomas E. Wing, plaintiff believing that the true consideration for the sale was as stated to him, defendant specifically stating to plaintiff that he was obtaining nothing out of the deal, "but am glad enough to be able to save you from loss," was paid the money advanced plus a profit of some $14,000 or $15,000; that as a matter of fact the defendant was receiving and did receive secret profits in the transaction, in that there was delivered to him 10,000 shares of the Texas Gulf Sulphur Company stock, and paid him other and fur-

ther sums of money which plaintiff believes to be in excess of $1,000,000; that these facts were concealed from plaintiff at that time, and have been continuously concealed from him, and were not known by him until after the institution of the suit of Fisher against Snyder above referred to.

Plaintiff alleges that after the issuance of the original stock the defendant obtained a reissue of four shares for each original share, making 40,000 shares, of the market value of $78 per share, a gross value of more than $3,-100,000, and that during the time that defendant has held the stock he has received dividends therefrom in the sum of $500,000; that the defendant's action in obtaining such profits and concealing them from plaintiff was in fraud of plaintiff's right, and that defendant is liable to plaintiff for his actions for the full value of the properties and moneys received by him over and above defendant's proper share therein, which plaintiff alleges he has elected to declare as 25 per cent. thereof; and that, by reason of defendant's fraud, defendant is indebted to plaintiff in the sum of $3,555,000 actual damages and $250,000 exemplary damages. Plaintiff prays for a writ of attachment, a writ of garnishment, and that defendant Snyder be required to file a complete accounting of all profits which he has obtained, and that plaintiff obtain judgment for his debt and damages.

Coincident with the filing of his petition, plaintiff filed an affidavit for a writ of attachment, alleging that plaintiff's suit was to recover actual and exemplary damages, $3,555,000 actual and $250,000 exemplary, and prayed that the judge of the court fix the bond, and that order of attachment issue. Bond having been given, writs of attachment issued to Harris and to Wichita counties, both of which were returned unexecuted, and on the same day writ of garnishment, dependent upon this attachment, was issued to the Texas Gulf Sulphur Company, under which there was seized 54,100 shares of the capital stock of said corporation, of the value, as alleged, by plaintiff, of around $4,000,000. The defendant Snyder duly and promptly removed the cause to this court, filed his motion to quash, abate, and dismiss, and the matter now stands for decision upon these motions.

The defendant's positions in this case are substantially the same as those taken in the Fisher Case. Here, as there, it is earnestly contended that plaintiff's claim is not upon an unliquidated, but upon a liquidated, demand, and therefore, the bond being in less than double the amount of the claim, the attachment must fall, and with this position of defendant I agree; for here, as in the Fisher Case, plaintiff's suit is in form an action upon a contract of partnership in and by which plaintiff seeks to trace and to recover properties, or their value, which he claims defendant obtained for his benefit and has been for his benefit holding, and here, as there, plaintiff seeks to hold the defendant as his trustee, for not only the original properties, which he claims the defendant unlawfully deprived him of, but for the issues and proceeds therefrom, and the reissues thereof. While the Fisher Case presents an abuse which the statute relied upon could be made the instrument of, this case presents a greatly more egregious instance of such abuse.

Here, in a controversy which in law and in fact is the assertion of a right to recover from a defendant specific properties which he has unlawfully deprived plaintiff of, or their value, a claim in which no element of tort or unliquidated demand appears, it is sought, by the simple device of using harsh-sounding names and asserting a claim for exemplary damages, to create a situation where a plaintiff, without assuming the responsibility which the attachment statute contemplates, seeks to impound properties of the value of $4,000,000 upon an inadequate bond of $25,000. It was never intended by the Legislature of the state of Texas that a person having a claim such as this could, by simply calling it a tort action, avoid the wholesome requirement that plaintiff give bond in double the amount of the debt. It was never intended that, by the mere device of calling an action springing from a contract an action in tort, or by suing for exemplary damages, that it should be thereby changed from a liquidated to an unliquidated demand, and it is plain that the Legislature, having this contingency in mind, clearly and explicitly protected against it by providing for the allowance of attachment for jurisdictional purposes, both in tort and on unliquidated demand, but for the fixation of bond by the District Judge in cases of unliquidated demand alone.

It appearing, therefore, that plaintiff has brought an action upon a liquidated demand, and has caused an attachment to be issued without making the bond required by statute for such a demand, it is plain that the attachment was unlawfully issued; that it and its attendant garnishment must fall, and that no formal amendment can save the attachment. This disposition of the case makes it

unnecessary for me to determine the point, urged with so much force by defendant in this case, that attachment cannot be used for the exploitation of a mere fishing demand, and that it should be quashed, where it appears from the petition itself that a summation of the amount due finds no support in the facts alleged as a basis for the claimed debt.

I think it appropriate to say, however, that unless foreclosed by precise statutory provisions, which prevent inquiry into this feature of the case, it seems to me that plaintiff's case as stated would not support a claim in attachment, because of the fact that, before any debt could be alleged as a debt an accounting would have to be had between the plaintiff, Hudson, and defendant, plaintiff's petition and contracts showing Hudson's definite interest in the matter, and defendant Snyder's wholly indefinite interest, dependent, as it was, upon some method of ascertainment, assessment, and fixation by plaintiff.